Good morning, Your Honor. State your name, card, testimony, and federal public defender for Appellant Harris. Your Honor, the California Court of Appeals unreasonably determined the facts when it stated that Mr. Harris had untimely invoked his Faretta rights, when in fact he had began the process within two weeks after his initial arrangement in November. Nevertheless, he affirmatively invoked his Faretta rights. You're talking about when he – when they had the Marsden hearing? It characterizes a Marsden hearing. Right. But what is clear is that Mr. Harris was dissatisfied with his counsel and was preparing to proceed on his own behalf. Did he inform the district court judge – I mean, the trial court judge at that time that he was – that he was – he wanted to proceed pro se? He didn't say the words pro se, but frankly, he had little opportunity to say anything on the record before the court told him, your counsel is representing you well, I'm not going to hear this, let's move on, and then the hearing ended. The – he then – the next substantive hearing was on January 20th, when he affirmatively, explicitly, and clearly invoked his Faretta rights. At that point, the court gave him the forms that the State of California uses for waiver of counsel and for self-representation and then decided I'm not going to handle this right now, I'm going to deal with the continuance of the co-defendant's matter. And in fact, the court granted three continuances for the co-defendant. However, only at the next proceeding, January 24th, did it decide to undertake considering Mr. Harris's Faretta request. As a couple days later? A couple days later, a couple of court days later. By then, it was two days before what was the – supposed to be the final trial date, but it ended up being continued one more day. And when he was handling it, he said, you know, are you prepared to go to trial? And he said, yep, I'm ready. As long as the evidence hasn't changed, I'm ready to go. Exactly. And then that – I'm sorry. Isn't that true? That's true. And then that afternoon, he finally received the police reports that his – that his attorney had obtained. And I hesitate to even call it discovery because, in fact, trial counsel filed no discovery motions. It was the police reports given to him apparently by the prosecutor in the case. So when he received the police reports, he saw, as he indicated, possibilities for defense. He also, in that day and a half before the next trial date on the 26th, he saw that he had defenses available to him. And the significant one here is whether he would exercise his right to represent himself. But we don't even have to get into the continuance matter because the trial court clearly did not give him sufficient time to prepare. Even under state law, the defendant is – the FREDA defendant is given time to prepare. Mr. Harris had a day and a half and one trip to the library, and then he was off. And he was – But he said he was ready. He – only after he was threatened with, if you ask – if you disrupt these proceedings, if you ask for a continuance, if you do anything, I'm going to have your counsel back in, inserted back in. That's not exactly what the judge said, was it? He said, I am going to – he said, if you are ready to go, I am – if anything disrupts these proceedings based on my having granted pro per privilege to you, trial counsel will be inserted back in as your attorney. That was after he said he was ready to go, wasn't it? It was – but that was before he had received a discovery on the afternoon of the 20th. And he said he'd be ready to go unless the facts changed. And there was no indication – he never told the court the facts had changed. In fact, when the – when it came up, that last incident that you're talking about, he never even said, well, I've got A, B, C, D changed in the facts. He said, well, I've gone to the library, and I think there might be something out there. The judge said, look, are you ready to go? And he said, yes. Isn't that right? First of all, this was an open court, so a defendant – any defendant or counsel is not required or shouldn't be required to disclose their possible defenses in open court. Secondly – It wasn't a defense question. The question was – Pardon? I'm sorry. You didn't say you had to disclose your defenses. The court said you said you were ready to go unless the evidence changed. It didn't change. Well, under Armand v. Vasquez, the – what the court looks to is whether – it doesn't require a specificity as to what he would have shown. It just asks that the defendant show evidence that could have been helpful to his decision. Here, Mr. Harris wanted to consider three possible avenues, the significant one being to decide whether to exercise his right to represent himself. This was an identification case that was pretty shaky as it was. The victim in the case had made – could not identify Mr. Harris and, in fact, did not identify Mr. Harris until an in-court identification, which several courts have held is inappropriate. Mr. Harris, however, wanted to evaluate the records he received, the discovery he received, go back to the library. And we're talking – if the court had handled his Feretta request on the 24th, he would have had a week. And perhaps there would have been a sufficient amount of time. We don't know. But as it was, the court gave him no time whatsoever. Now, I think the problem is that the Feretta request was mishandled. The court did not consider it until Mr. Harris had the forms and four days later was able to fill them out and – Let me ask you. So what's the core of your constitutional claim? That once a defendant is granted the right to exercise his rights under Feretta, he should be given the reasonable condition. Okay. Now, what United States Supreme Court case says that? The closest case is McCaskill v. McCaskill, 465 U.S. 168, which says that there's no prejudice for a Feretta violation. There's no – say that again. There's – For a – when a defendant's Feretta's rights are violated, there – he must – did he not show a prejudice because it is structural error. Here, if the court had considered Mr. Harris's – No, but you just told me – I just asked you – okay. So I asked you what United States Supreme Court said – decision says that once a trial court judge has agreed to allow a defendant to proceed pro se under his Feretta right, what U.S. Supreme Court case says that at that instance, if the defendant asks for a continuance, the judge must grant it? There is no Supreme Court case on point. However, if I – Now, the California Supreme Court says something to that effect, correct? It does say that a – In Douglas. That a Feretta defendant should be afforded the same indulgences afforded to trial counsel, to an attorney. Here, at the most, the court – at the least, the court could have granted him a one-week continuance, which would not have disrupted the trial date it had already set, had the court handled adequately his initial request for a Feretta invocation on January 20th. It didn't. It put him off until it was too late, and then used that against him. Okay. Did you want to save some time for rebuttal? Yes. Thank you, Your Honor. Okay. Good morning, Your Honors. Deputy Attorney General Stephanie Brennan, on behalf of Respondent Pellea the Warden. First, I feel compelled to point out sort of two egregious misrepresentations or mischaracterizations of the facts. We've had sort of a preview of this in Appellant's argument. With regard to that November 24th, 1999 Marsden hearing, there was no Feretta there whatsoever. Well, he wasn't happy with his counsel, wasn't he? He was not happy with his counsel, but being unhappy with your counsel, as this court knows, Marsden has to do with trying to get a different appointed counsel. It does not have anything to do with requesting to go pro se. And as the district court found in this case, when it finally received the transcript of the Marsden from Appellant, looked at that transcript and said, nowhere in this transcript is there any request for self-representation or for a continuance. So I find, quite frankly, Appellant's repeated insistence that there's some sort of Feretta in there, both stated in the opening brief and repeated in the reply, just to be, I guess the word is creative. There's no basis in fact for that. Secondly, I want to point out to this court that the reply brief's representation with regard to the trial court's, quote, failure to expeditiously rule on his Feretta when he requested it for the first time on January 20th is completely incorrect. What happened there was that, yes, he did ask for Feretta on the 20th. The court gave him the pro per forms that he needed to fill out so that he would make a knowing and intelligent waiver. The court said on the record, yes, I want to get this done today. Gave him the papers, took a recess so that he could fill out that paperwork. They come back on the record, and Appellant says, or Petitioner says that he hadn't filled it out yet, hadn't finished it. And so the court says to him, okay, what I'm going to do is I'm going to continue this to Monday, January 24th, and I expect you to have this paperwork done at that time. So that's the reason why it wasn't done on the 20th, because he didn't finish the paperwork. Appellant himself. They come back on the 24th, and that's where they go through the litany of the Feretta. And surprisingly, even at that point in time, Petitioner hasn't even finished the paperwork. He didn't even finish the first page. So the court had to do it kind of with him at that point in time. So, again, to characterize that the trial court in some way delayed the Feretta ruling, there's just no basis in fact for that. Finally, let's just turn to the actual certified issue, which has nothing to do with timeliness, the timeliness of the Feretta. What this court certified as the issue was whether Petitioner's due process rights were violated if there was some sort of conditioning of his Feretta on or to get a continuance. So whether self-representation rights versus the continuance. This case ultimately comes down to a determination as to whether there should have been a continuance or not. That's how we determine it. And as we can see from the record, the State courts reasonably determined that there was no abuse of discretion in the absence of a continuance. In fact, the district court correctly determined that there's not even a factual predicate in this case for such a claim because the fact is that when he asked for, said he needed, that he wasn't ready, and the court goes through a litany of questioning him on the 26th, which is the day that was supposed to start for trial, it goes through sort of the history of everything. Petitioner interjects, I'm ready to go to trial. I'm prepared. And then says, are you ready? And then he says, yes. So as the district court correctly found, the facts show that he actually withdrew his continuance request. But there you're talking about the 26th? The 26th. So here there's not even a denial of a continuance request. There's just no basis for any sort of constitutional claim. But even assuming arguendo, as the district court did, that the trial court's actions in some way were some sort of de facto denial of a continuance, the state courts here reasonably determined that there was no abusive discretion by the trial court in its actions. We apply the factors that this court has applied in Flint, Mejia, and find that under Unger and Morris, the Supreme Court cases, there was no abusive discretion. He was not diligent. The first time he ever said that he wanted to go pro se was on the 20th. There was no indication that any continuance would serve a useful purpose. Because, again, as Judge Fernandez pointed out, the reason that he said on the 24th that he might need a continuance was if the evidence changed. But as the court of appeal pointed out, the evidence didn't change. It remained the same. So that's no useful indication. On the 26th, when he says, you know, I may not be ready, because the reason he gives is that he went to the library and found that there might be some options for his defense, that's the extent of what he says. But as Petitioner herself points out, I mean, this is an I.D. case. Suppose the defendant had just said, I want to proceed pro se. There's a knowing, intelligent waiver. And as part of that, he says, okay, I want to proceed. I need to proceed pro se. I want to proceed pro se. But I need a continuance. And maintains that position all the way along. And the judge says, no, you can't proceed pro se if you're going to ask for a continuance. Can you do that? Well, that's a different issue than what we have presented here. I know. Well, that depends under California state law. And that's where we get to a timely FARETA invocation, which, again, is not what happened here. And the fact that here he did get his FARETA. But under California state law, that's when they can take into consideration these various factors. If you have an untimely, a late FARETA, here which would have been on the day, the 20th at that time was the day scheduled for trial. The court could have justifiably denied the pro se if it had found all these different factors, which I believe under California state law are the Wyndham factors. And under our law, assuming our law, assuming we were the Supreme Court, California state law wouldn't work, would it? Because we've said, oh, well, as long as you object before the jury's sworn, it's okay. So we really, one really has to say, well, the Supreme Court's never said anything like that. Is that true? That is correct. That is correct. But, again, here this is just a hypothetical. It's not what exactly happened here. Well, it's not exactly what happened. But the judge, at least on the 26th, throws a pretty strong hint that it wouldn't take rocket scientists to pick up on. You know, if you're not, you told me you're going to be ready to go to trial on the 26th. If you're not prepared, you're not going to represent yourself pro se. That's kind of what he said to him. He didn't say that in as many words, I understand. But didn't he sort of say that? No. I can see that point. I mean, I can see that that's perhaps an interpretation that could have been drawn from it. Yeah. Harris said, I'm ready to go to trial. I mean, he just plain said it. Yes. So, thankfully, we don't have to get into that. I'm just trying to make sure I understand the issues at hand. But, ultimately, ultimately, and what is surprising, here there has to be showing of actual prejudice. There was none. In fact, it's sort of surprising that in the opening brief there isn't even any argument that there is actual prejudice. It's only now on here, before this Court, at this hearing, that Petitioner is sort of bringing in the prejudice claims that he raised in the district court but failed to do so before this Court. And if this Court has any other questions, you're prepared to submit. Thank you. Thank you. We have some time for rebuttal. The Respondent's contention that the administrative problems or administrative delay caused by filling out forms is inadequate to deprive Mr. Harris of his Faretta rights, he clearly invoked his Faretta rights on the 20th. He was given the forms. And the Court said, do I really have to go through all this? I think I'll just handle the continuance first. And then it continued the trial and told Mr. Harris, I'll deal with your Faretta later. How much deference should we give the California Appellate Court who found that this was a delay tactic? A little deference because he had invoked it. He had initially said in November that there were problems with his counsel. And the trial court called it a Marston hearing and shut it off and shut it down and said you're going, it remains as is. Then at the third hearing, the third hearing after that, a week before the trial, Mr. Harris clearly invoked his Faretta. It was not to delay. The trial was still a week away. He was as ready then as he was on the 24th. So he could, had he been asked, had he been told, if you're going to go represent yourself, understand I'm not going to give you continuance. What is the principal prejudice he has suffered? I'm sorry. What's the number one prejudice that he has suffered, assuming you're right on the other arguments? That he was given, it effectively denied, the failure to give him continuance effectively denied him his right to represent himself. In what way? Because he was not able to prepare his case adequately. He was not able to evaluate, for example, whether he could exercise his right to testify on his own behalf. Since this was an identification case and the victim, Melendez, had significant problems identifying Mr. Harris, then Mr. Harris could have exercised his right and testified. And given the facts to the jury, and the jury could have decided to believe Mr. Harris rather than Mr. Melendez, who had problems recalling the perpetrators. Okay. You're over your time. Thank you. Thank you very much. We appreciate both arguments. And the case is submitted for decision. Our next case for argument is Porsche. I'm not sure if I'm pronouncing that correct, Porsche, versus Pilot and Associates, Inc.
judges: Fernandez, Paez, Hogan